## DODD v. LAKEVIEW MOTORS, Inc.
### No. 4569.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1933.

Stephens & Gahagan and J. O. Gunter, all of Natchitoches, for appellant.

W. Peyton Cunningham, of Natchitoches, for appellee.

MILLS, Judge.

On May 2, 1931, while employed by the Lakeview Motors, Inc., at Natchitoches, La., as a mechanic, Joe Dodd was struck in the left eye by a flying piece of steel. The injury not yielding to simple remedies, on June 8, 1931, he was sent by his employer to Dr. Boaz, an eye specialist, at Shreveport, La. The physician testifies that the X-ray disclosed a

piece of steel embedded in the eye; that the patient's vision in that eye was failing, due to uveitis, caused by the presence of the steel; that Dodd showed no symptoms and gave no history of syphilis.

Plaintiff continued in his employment, but his sight continuing to fail, he was examined on March 8, 1932, by Dr. Charles A. Bahn, an oculist, at New Orleans. This specialist found the same conditions existing as testified to by Dr. Boaz, with the exception that at the time of this examination the sight in the left eye had completely failed. To prevent possible infection of the good eye, the left eye was removed. Dr. Bahn testifies that, while syphilis is most frequently the cause of uveitis, it may result from other causes. From the history of the case and his observation, he found nothing to indicate that Dodd was infected with syphilis.

On March 17, 1932, within one year of the occurrence of the accident, the New Orleans agent of the insurance company which had brought him to New Orleans for examination, and which had paid the expenses he incurred in making the trip, delivered to Dodd a draft on the company for $16.25. The draft reads, "in full and final satisfaction of compensation under the Workmen's Compensation Act of the State of Louisiana for the period beginning March 8, 1932, to March 14, 1932, inclusive."

Having some difficulty in getting the check cashed at the bank, it was indorsed for him by the firm of H. Bodenheimer & Sons, general agents for Louisiana of the Southern Surety Company of New York, insurers herein. Whereupon, it was again presented at the bank, was paid, and a receipt for same was executed by Dodd. Before the draft reached the drawee, the company went into the hands of a receiver and an injunction issued prohibiting further payments of all kinds. The draft therefore was not and never has been actually paid by the drawee, though plaintiff received and still retains the amount for which it was drawn. No further weekly payments being made, this suit was filed August 29, 1932, more than one year from the date of the accident, but less than a year after the execution and cashing of the draft.

Two defenses are offered: First, that the loss of the eye was due to syphilis and not to the accident; and, second, that plaintiff's claim is barred by the limitation of one year, provided for in section 31 of the Workmen's Compensation Act (Act No. 20 of 1914, as amended by Act No. 85 of 1926, § 1).

The lower court in a well-considered written opinion found in favor of plaintiff on the first issue, but rejected plaintiff's demands on the ground that his action was barred by the limitation pleaded in the second defense. From this judgment plaintiff has appealed.

■ We have no difficulty in agreeing with the trial judge on the first issue. The only evidence offered of syphilis is that plaintiff recovered slowly from slight abrasions and scratches received in his employment. The testimony of the physicians, coupled with the plaintiff's denial of the infection, more than offsets this testimony.

■■ The plea of prescription presents a more serious question. The prescriptive period having elapsed and it being pleaded, the burden is on the plaintiff to show its interruption. Plaintiff relies upon the issuance and indorsement and alleged payment of the above-described draft to discharge this burden.

The defendant, Lakeview Motors, Inc., was ignorant of, never consented to, authorized, nor ratified the issuance of the draft. Therefore, as to them, it could not in any event avail as an interruption, unless it is established that the insurance company and defendant were obligated to plaintiff in solido; the well-settled rule being that the interruption of prescription as to one codebtor in solido interrupts as to all. Article 2097, Revised Civil Code; Rhys v. Moody, 163 La. 1039, 113 So. 367.

Section 31 of Act No. 20 of 1914, as amended by Act No. 85 of 1926, § 1, provides:

"That in case of personal injury (including death resulting therefrom) all claims for payments shall be forever barred unless within one year after the accident or death of [sic] the parties shall have agreed upon the payments to be made under this act or unless within one year after the accident, proceedings have been begun as provided in Sections 17 and 18 of this act. Where, however, such payments have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment."

■ Under the plain terms of this section, we do not think it imperative that actual payments should be made in order to interrupt limitation. The act reads, "the parties shall have agreed upon the payments to be made under this act." We are of the opinion that the issuance of the draft, as drawn by the agent of the company, and its acceptance by plaintiff, as evidenced by his presenting the draft for payment and giving his receipt therefor, show an agreement upon the payments to be made, as provided in section 31. Under the plain verbiage of that section, the limitation is interrupted by the agreement. Where, however, payments are made under the agreement, then the limitation begins to run from the time of the making of the last payment. If there is such an agreement and no payment at all, the limitation runs from the date of the agreement. In this case the date of the agreement and that of the pay-

ment are both within the period of limitation. Such being the case, the suit would have been timely filed, if against the insurance company. Being against the defendant alone, the limitation is only interrupted as to it in the event that it is found that the obligation of the employer and the insurer towards plaintiff was in solido.

■■ Article 2091 of the Revised Civil Code provides there is an obligation in solido on the part of debtors when they are all obligated to the same thing so that each may be compelled for the whole, and that the payment which is made by one of them exonerates the others toward the creditor.

Article 2093 of the Revised Civil Code reads: "An obligation in solido is not presumed; it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."

We do not think this last article means that the words "in solido" must necessarily appear in the contract agreement or obligation. It is sufficient if all of the essential elements of an obligation in solido are present. For instance, a promissory note made by several persons and reading, "I promise to pay," is an obligation in solido even though the specific words do not appear in the instrument.

Section 26 of the Workmen's Compensation Act provides that every policy for the insurance of the compensation herein provided for or against liability therefor shall be deemed to be made subject to the provisions of this act.

Section 23 (as amended by Act No. 85 of 1926, § 1) reads: "That no policy of insurance against liability arising under this act shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments of the compensation that may be awarded or agreed upon, and that this obligation shall not be affected by any default of the insured after the injury, or by any default in the giving of any notice required by such policy, or otherwise. Such agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name. No policy of insurance against liability under this act shall be made unless such policy shall cover the entire liability of the employer under this act; provided, that as to the question of the liability as between the employer and the insurer the terms of the insurance contract shall govern. * * *"

In Wyatt v. Finley, 167 La. 161, 118 So. 874, 876, it is held that under the provisions of this section, "the defendant insurance company is bound as directly and as fully under its policy, as the employer is bound under the act, to pay all compensation due to the employee or his dependents."

Under section 23 of the Employers' Liability Act, the obligation of the insurance company is primary and not secondary. Hence, what good reason can there be for adjusting the loss first against the employer instead of against the insurance company, which has to pay? Indeed, plaintiffs, as the dependents of the deceased employee, are not obliged to sue the employer if they do not so desire, as they have a direct cause of action against the insurance company alone, under section 23 of the act, or a cause of action against the employer alone, or against both the employer and the insurance company, under section 25 of the act.

The law then attaches to the obligation of the insurer and the employer toward the employee, all the essential elements of an obligation in solido. They are obligated to the same thing, so that each may be compelled for the whole and wherein payment made by one of them exonerates the other toward the employee. This being true, the obligation of defendant company and its insurer toward plaintiff is in solido.

Under the rule as to the interruption of prescription between obligors in solido, having found that the agreement as to payments between plaintiff and insurer interrupted the limitation provided in section 31 of the act, as of date March 17, 1932, as to the insurer, the limitation was likewise interrupted as to the employer. Plaintiff's present cause of action is then not barred by limitation.

The testimony shows that plaintiff worked on a commission and that his average weekly earning for a period of fifty-two weeks preceding the accident was $22.72, 65 per cent. of same being $14.76. For the loss of an eye, subsection 1 (d), subd. 9, of section 8 of the act (as amended by Act No. 242 of 1928) allows 65 per cent. of the wages during one hundred weeks.

For the above reasons, the judgment appealed from is reversed, and judgment is now rendered in favor of plaintiff against defendant in the sum of $14.76 per week during one hundred weeks, beginning May 9, 1931, with legal interest on each weekly payment from the date it is due until paid, less the amount of $16.25 already received by plaintiff; defendant to pay costs of both courts.