520 So.2d 1314 (1988)
EVANGELINE FEDERAL SAVINGS AND LOAN ASSOCIATION
v.
Lawrence C. CATHA, Constance Vachon Catha, Ray L. Peacock and Gladys Doan Peacock.
No. 87-CA-482.
Court of Appeal of Louisiana, Fifth Circuit.
February 8, 1988.
*1315 Leonard L. Levenson, Carla A. Failla, New Orleans, for defendants-appellants.
G. Tim Alexander III, Gordon, Arata, McCollam, Stuart & Duplantis, Lafayette, for plaintiff-appellee.
Before GRISBAUM, WICKER and GOTHARD, JJ.
GRISBAUM, Judge.
This appeal relates to a suit on a $300,000 promissory note secured by a Pledge of Collateral Mortgage Note, which was in turn paraphed for identification with an Act of Collateral Mortgage encumbering certain real estate located in the French Quarter. After much procedural manipulation, a partial summary judgment was granted to the plaintiff. We affirm.
ISSUE
We are called upon to determine whether the trial court erred in finding defendants solidarily liable and in granting a partial summary judgment in favor of the plaintiff.
FACTS
Defendants, Mrs. Constance V. Catha, Mr. Lawrence C. Catha, Mrs. Gladys D. Peacock, and Mr. Raymond L. Peacock, borrowed $300,000 from Evangeline Federal Savings and Loan Association (hereinafter referred to as "Evangeline") to invest in the Landmark Hotel in Metairie, Louisiana. As evidence of that obligation, Mr. Catha and Mr. Peacock executed a negotiable promissory note and signed the back of the note. To secure the note, they executed a Collateral Mortgage Note dated September 11, 1984, for $300,000, which was paraphed by the notary for identification with an authentic Act of Collateral Mortgage dated the same day. Finally, an Act of Collateral Pledge Agreement was executed. Mr. Catha and Mr. Peacock signed all of the above-mentioned documents both individually and on behalf of their wives pursuant to a "Special Power of Attorney" executed by each wife on August 29, 1984. In those instruments, Mrs. Catha and Mrs. Peacock empowered their husbands, among other things, "to obligate PRINCIPAL jointly and in solido in the event that there are other borrowers or purchasers."
PROCEDURAL HISTORY
The defendants defaulted, and, on December 19, 1985, suit was filed against all four defendants in solido for the unpaid balance of the principal, $292,077.63, and for interest through November 7, 1985 of $25,191.90, thereafter at a rate of $120.03 a day until paid, together with 25 percent attorney's fees on said principal and interest and all costs of these proceedings.
On February 27, 1986, Mr. Catha and Mr. Peacock were deposed. Instead of testifying at the deposition, both wives stipulated that any documents signed by their husbands *1316 had been signed on their behalf as well. Mr. Catha and Mr. Peacock corroborated this stipulation in their deposition testimony. Both Mr. Catha and Mr. Peacock acknowledged their signatures on all of the documents and admitted they were liable on the notes in question. However, none of the defendants commented on whether the obligation was solidary or not.
The defendants answered the plaintiff's petition on June 6, 1986, denying all of the allegations contained therein. On July 22, 1986, the plaintiff filed a Motion for Summary Judgment. In support thereof, the plaintiff introduced the depositions of Mr. Catha and Mr. Peacock, the affidavit of Mr. Bofill Duhe, and the stipulations of the wives. In his affidavit, Mr. Duhe stated that he was the loan officer responsible for the loan to defendants, and, based upon his personal knowledge of which he was competent to testify, the allegations contained in the plaintiff's petition and amended petition were true and correct. Lastly, he stated that the defendants were obligated in solido to Evangeline for $292,077.63 in principal, with interest through November 7, 1985 of $25,191.90 and thereafter at the rate of $120.03 per day until paid, together with attorney's fees of 25 percent of the principal and interest, and all costs of these proceedings.
On September 24, 1986, the defendants filed an Opposition to the Motion for Summary Judgment and a Memorandum in Support Thereof. They also filed a First Amending and Supplemental Answer on that day, alleging, among other things, that they were not solidary obligors. The judge allowed the amendment by order dated September 24, 1986.
A hearing on the Motion for Summary Judgment was held on September 26, 1986, and the trial judge indicated he would award judgment to the plaintiff. However, the judgment subsequently prepared by the trial court erroneously granted interest upon interest, contrary to the prayer of the petition. The defendants filed a Motion for New Trial on November 25, 1986, alleging that the judgment was contrary to the law and the evidence for five reasons. On January 2, 1987, the plaintiff filed a Motion to Amend Judgment in accordance with La.C. C.P. art. 1951. Both motions were heard on January 23, 1987, and on January 28, 1987, the trial court granted the Motion for New Trial for the limited purpose of amending its judgment to delete the interest on interest provision. The defendants appeal.
LAW
The initial question is whether the trial court erred in declaring the defendants to be solidary obligors.
La.C.C. art. 1796 states, "Solidarity of obligation shall not be presumed. A solidary obligation arises from a clear expression of the parties' intent or from the law." One example of a "clear expression of the parties' intent" can be found in La.R.S. 10:3-118(e), which states, "When an instrument containing the words `I promise to pay' is signed by two or more persons, they are deemed to be jointly and severally liable thereon." In Dodd v. Lakeview Motors, Inc., 149 So. 278, 280 (La.App. 2d Cir.1933), the court interpreted the predecessor to La.C.C. art. 1796. La.C.C. art. 1796 restates the principles of former La.C. C. arts. 2093 and 2107, and Comments to art. 1796 indicate that it did not change the law. In Dodd, supra at 280 the court states
Article 2093 of the Revised Civil Code reads: "An obligation in solido is not presumed; it must be expressly stipulated. This rule ceases to prevail only in cases where an obligation in solido takes place of right by virtue of some provisions of the law."
We do not think this last article means that the words "in solido" must necessarily appear in the contract agreement or obligation. It is sufficient if all of the essential elements of an obligation in solido are present. For instance, a promissory note made by several persons and reading, "I promise to pay," is an obligation in solido even though the specific words do not appear in the instrument.
Both La.R.S. 10:3-118(e) and Louisiana jurisprudence make it clear that the language "I promise to pay ..." in an instrument *1317 signed by two or more persons results in solidary liability. See Ford Motor Credit Co. v. Soileau, 323 So.2d 221, 225 (La.App. 3d Cir.1975) and Shreveport Bank and Trust Co. v. Tyler, 275 So.2d 451, 452 (La.App. 2d Cir.1973). The jurisprudence also provides a clear guideline that the language "we promise to pay" in such a situation results in joint liability in the absence of additional promissory language or a note provision to the contrary. See Johnson v. Jones-Journet, 320 So.2d 533, 536 (La.1975) and Swan v. Mayer, 211 So.2d 346, 349 (La.App. 4th Cir.1968).
However, there is only one case that discusses a situation in which both "I" and "We" appear on a promissory note preceding the words "promise to pay...." In Gavin v. Superior Applicators, Inc., 484 So.2d 792, 794 (La.App. 1st Cir.1986), writ denied, 487 So.2d 439 (La.1986), the note in question stated, "I (We) promise to pay...." The court found that the above-cited language provided no clear expression of the parties' intent to be bound solidarily. The court observed that the "I (We)" language was printed as part of a standard form for a blank promissory note. It states
[T]his is a common method of drafting blank forms, such as contracts, where the letter s is placed in parentheses and is added to a word such as person to create person(s). This gives a different reading depending on whether or not more than one person is to be referred to.... Solidarity is not to be presumed. La.C.C. art. 1796. There is no clear expression of the parties' intent to be bound solidarily. Absent a clear expression, the law only creates solidarity in regard to promissory notes where the language, "I promise to pay" is used. La.R.S. 10:3-118(e). In common usage, the "I" would be read out of the sentence as more than one party was being referred to, and the pronoun "(we)" would be used. We will not presume that the language "I (We) promise to pay" with no additional language creates solidary liability.
Gavin, supra at 794.
The case at hand differs in several important respects from that in Gavin, supra. First of all, the language "I/We" was typed in; it was not part of the form as seen in Gavin. Moreover, the word "We" was not placed in parentheses, nor was the word "I." Finally, both Mr. Catha and Mr. Peacock signed the front of the note "individually and as agent for" their wives. (emphasis added.)
The trial court, in its Reasons for Judgment, amplified its rationale for finding defendants solidarily liable on the note in question by stating
[T]he Court is convinced that the clear and expressed intent of the defendants was to be bound in solido to the Evangeline Savings & Loan Association. Further, the Court considers that the defendants' intent was and is clearly evidenced by the fact that all four of them signed a collateral mortgage note which expressly states that they are binding themselves in solido and unconditionally for the payment of the note. Finally, the Court also considered the fact that the original note was endorsed by the defendants as further evidence of thier [sic] intent to be bound in solido. Simply stated, all the evidence, taken as a whole, indicates that the defendants intentionally bound themselves in solido towards the plaintiff.
Granting that, the intent of the parties cannot be interpreted in any manner except as an intent to be bound solidarily.
We now turn to determine whether the trial court erred in its finding that, after considering the pleadings and the memorandum of counsel, there were no issues of material fact, and accordingly, summary judgment should be granted. In its Reasons for Judgment, the trial court states
The defendants have argued to the Court: (1) that the interest rate on the note of 12 percent is usurious; (2) that the total of the defendant's [sic] indebtedness is unsubstantiated; (3) that the plaintiff hasn't shown that the defendants received the money; (4) that the attorney's fees are too high: [sic] and (5) that the defendants are not bound in solido towards the plaintiff.

*1318 Firstly, this Court considers that 12 percent interest is not usurious for a commercial loan, and furthermore it was satisfactorily established to the Court that the loan made to the defendants was indeed a commercial loan. Secondly, the Court is satisfied from the affidavit of the Evangeline Federal Savings & Loan Association representative that the amount of the indebtedness is correct, particularly since the defendants did not produce any contradictory evidence of their own. Thirdly, the Court is satisfied from the evidence that the defendants did, in fact, receive the money they borrowed, and in fact invested that money in the Landmark Hotel in Metairie. Furthermore, this fact has never been denied by the defendants; they merely allege in their memorandum in opposition to motion for summary judgment that the plaintiff has not proved this fact. The Court believes that the plaintiff's evidence (i.e. the depositions of the defendant) proves this issue. Fourthly, the Court leaves open the questions of attorney's fees until the plaintiff makes proof thereof to the Court.
Again, we agree. The pleadings and the supporting affidavits reveal that the only possible issue of fact which would necessitate denial of the motion for summary judgment would be the intent of the defendants upon signing the varied notarial acts. Here, too, the record amply supports the trial court's determination that there was no genuine issue of material fact and that the plaintiff was entitled to judgment as a matter of law. Therefore, the trial court did not err in granting the partial summary judgment.
For the reasons assigned, the judgment of the trial court is affirmed. All costs of this appeal are to be assessed against the appellants.
AFFIRMED.